The document below is signed as the first
installment of the court's opinion regarding the
subject application.  Dated: May 19, 2005.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                        )
                             )
RUFUS STANCIL, JR.,          )    Case No. 01-02220
                             )    (Chapter 7)
              Debtor.        )
                             )

FIRST INSTALLMENT OF OPINION REGARDING LINDA M. CORREIA'S
SECOND APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

The trustee in this chapter 7 case is Wendell W. Webster.

His attorney, Linda M. Correia, has filed a Second Application

for Compensation and Reimbursement of Expenses, seeking

compensation in the amount of $419,484.00 and expenses of

$23,889.21.  The debtor has opposed the application.  After

taking evidence on the issues, and hearing argument of counsel,

the court issues this writing as the first installment of its

opinion constituting its findings of fact and conclusions of law,

with the balance thereof issued in an oral ruling delivered today

from the bench.

I

Mr. Stancil's objections address work performed in what I

will refer to the Haselrig Litigation and work performed

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
RUFUS STANCIL, JR.,            )      Case No. 01-02220
                               )      (Chapter 7)
          Debtor.             )
                               )

FIRST INSTALLMENT OF OPINION REGARDING LINDA M. CORREIA'S
SECOND APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

     The trustee in this chapter 7 case is Wendell W. Webster.

His attorney, Linda M. Correia, has filed a Second Application

for Compensation and Reimbursement of Expenses, seeking

compensation in the amount of $419,484.00 and expenses of

$23,889.21.  The debtor has opposed the application.  After

taking evidence on the issues, and hearing argument of counsel,

the court issues this writing as the first installment of its

opinion constituting its findings of fact and conclusions of law,

with the balance thereof issued in an oral ruling delivered today

from the bench.

I

     Mr. Stancil's objections address work performed in what I

will refer to the Haselrig Litigation and work performed

regarding the debtor's Sherman Avenue Property.

<u>The Hasselrig Litigation</u>

Much of the debtor's opposition to the fee request concerns an interpleader action entitled <u>United States Postal Service v. Burrell L. Haselrig Construction Company, et al.</u>, Civil Action No. 8:02-00170-AW in the United States District Court for the District of Maryland.  The lead defendant, Haselrig, had a contract with the Postal Service for construction of a post office at LaPlata, Maryland, which would be leased to the Postal Service.  The debtor Stancil and his wife Delores Stancil were engaged in a joint venture with Haselrig with respect to the development of the property, with the Stancils obtaining financing.  However, the meaning of the terms of that joint venture and its consequences were disputed in the litigation. (Haselrig asserted that the Stancils were entitled to a 60% joint venture interest only if the post office was actually constructed.)  The Stancils assisted Haselrig in obtaining a loan from Industrial Bank, and in return were assigned a right to purchase the LaPlata property on which the post office was to be placed.

However, the Postal Service terminated the contract. Haselrig hired Byrd & Byrd, L.L.C. ("Byrd & Byrd") to pursue a damage claim against the Postal Service for wrongful termination. Byrd & Byrd, as another interpled defendant, made a claim to 40%

2

regarding the debtor's Sherman Avenue Property.

<u>The Hasselrig Litigation</u>

Much of the debtor's opposition to the fee request concerns an interpleader action entitled <u>United States Postal Service v. Burrell L. Haselrig Construction Company, et al.</u>, Civil Action No. 8:02-00170-AW in the United States District Court for the District of Maryland.  The lead defendant, Haselrig, had a contract with the Postal Service for construction of a post office at LaPlata, Maryland, which would be leased to the Postal Service.  The debtor Stancil and his wife Delores Stancil were engaged in a joint venture with Haselrig with respect to the development of the property, with the Stancils obtaining financing.  However, the meaning of the terms of that joint venture and its consequences were disputed in the litigation. (Haselrig asserted that the Stancils were entitled to a 60% joint venture interest only if the post office was actually constructed.)  The Stancils assisted Haselrig in obtaining a loan from Industrial Bank, and in return were assigned a right to purchase the LaPlata property on which the post office was to be placed.

However, the Postal Service terminated the contract. Haselrig hired Byrd & Byrd, L.L.C. ("Byrd & Byrd") to pursue a damage claim against the Postal Service for wrongful termination. Byrd & Byrd, as another interpled defendant, made a claim to 40%

2

of the proceeds by pointing to a Contingency Agreement of January 1998. The Contingency Fee Agreement replaced an Hourly Fee Agreeement.

The Stancils guaranteed Byrd & Byrd's fees, and gave Byrd & Byrd a security interest in their Sherman Avenue property in Washington, D.C. to secure payment of $75,000 (referring to a note obligation although the only obligation outstanding was the guarantee obligation) in exchange for a release of a lien on other property they owned. Byrd & Byrd later took the position that this security interest could be enforced independent of the outcome of the litigation regarding the postal facility. Perhaps the $75,000 was a minimum amount that Byrd & Byrd was to be paid even if it recovered nothing by virtue of the Contingency Fee Agreement, or it represents $75,000 incurred under the hourly fee agreement that was not displaced by the Contingency Fee Agreement.[1]

The Postal Service conceded that an initial sum of $71,258.00 plus interest was owed, and that amount was interpled in an earlier civil action in which the court awarded the entire amount interpled to Byrd & Byrd. Industrial Bank apparently appealed that decision, but not the Stancils or Haselrig. Byrd & Byrd seized on that decision as collateral estoppel or *res*

---

[1] If Byrd & Byrd were to recover based on a contingency fee out of a recovery, it is difficult to understand why it would need additional collateral.

3

of the proceeds by pointing to a Contingency Agreement of January 1998.  The Contingency Fee Agreement replaced an Hourly Fee Agreeement.

The Stancils guaranteed Byrd & Byrd's fees, and gave Byrd & Byrd a security interest in their Sherman Avenue property in Washington, D.C. to secure payment of $75,000 (referring to a note obligation although the only obligation outstanding was the guarantee obligation) in exchange for a release of a lien on other property they owned.  Byrd & Byrd later took the position that this security interest could be enforced independent of the outcome of the litigation regarding the postal facility.  Perhaps the $75,000 was a minimum amount that Byrd & Byrd was to be paid even if it recovered nothing by virtue of the Contingency Fee Agreement, or it represents $75,000 incurred under the hourly fee agreement that was not displaced by the Contingency Fee Agreement.[1]

The Postal Service conceded that an initial sum of $71,258.00 plus interest was owed, and that amount was interpled in an earlier civil action in which the court awarded the entire amount interpled to Byrd & Byrd.  Industrial Bank apparently appealed that decision, but not the Stancils or Haselrig.  Byrd & Byrd seized on that decision as collateral estoppel or *res*

---

[1]  If Byrd & Byrd were to recover based on a contingency fee out of a recovery, it is difficult to understand why it would need additional collateral.

3

*judicata* with respect to its claim to a 40% contingency fee.

The Postal Service and Haselrig later agreed that $2,661,000 (which includes the amount interpled in the earlier action) was owed to Haselrig: $2.58 million owed pursuant to the contract and $81,000 pursuant to the Equal Access to Justice Act ("EAJA"). The Postal Service then commenced the civil action for the purpose of interpleading the $2,661,000 in funds for the various entities claiming an interest in the funds to fight over.

The defendants included the Stancils who made a claim against the funds as Haselrig's joint venturer; Webster because he is trustee of the chapter 7 estate of Mr. Stancil which includes Mr. Stancil's interest in the interpled funds; Byrd & Byrd which asserted an attorney fee claim of 40% of the proceeds under the Contingency Fee Agreement; the Stancils; and Industrial Bank, N.A., which was eventually awarded $335,000 of the proceeds without contest.

In the civil action, Webster asserted a cross-claim against Byrd & Byrd for inducing Haselrig and the Stancils to enter into the Contingency Fee Agreement. Webster's answer filed on June 28, 2002, demanded a jury.[2] On September 25, 2002, Byrd & Byrd

_____

[2] There was some initial activity in the case before that, but it is of no relevance here. Byrd & Byrd filed a motion for summary judgment which Webster opposed by a filing of April 18, 2002. Webster simultaneously sought a discovery period in which to bolster his opposition to Byrd & Byrd's motion for summary judgment, and moved to transfer venue to this district. On June 3, 2002, Webster filed a response to the Byrd & Byrd's opposition

*judicata* with respect to its claim to a 40% contingency fee.

The Postal Service and Haselrig later agreed that $2,661,000 (which includes the amount interpled in the earlier action) was owed to Haselrig: $2.58 million owed pursuant to the contract and $81,000 pursuant to the Equal Access to Justice Act ("EAJA"). The Postal Service then commenced the civil action for the purpose of interpleading the $2,661,000 in funds for the various entities claiming an interest in the funds to fight over.

The defendants included the Stancils who made a claim against the funds as Haselrig's joint venturer; Webster because he is trustee of the chapter 7 estate of Mr. Stancil which includes Mr. Stancil's interest in the interpled funds; Byrd & Byrd which asserted an attorney fee claim of 40% of the proceeds under the Contingency Fee Agreement; the Stancils; and Industrial Bank, N.A., which was eventually awarded $335,000 of the proceeds without contest.

In the civil action, Webster asserted a cross-claim against Byrd & Byrd for inducing Haselrig and the Stancils to enter into the Contingency Fee Agreement. Webster's answer filed on June 28, 2002, demanded a jury.[2] On September 25, 2002, Byrd & Byrd

---

[2]  There was some initial activity in the case before that, but it is of no relevance here. Byrd & Byrd filed a motion for summary judgment which Webster opposed by a filing of April 18, 2002. Webster simultaneously sought a discovery period in which to bolster his opposition to Byrd & Byrd's motion for summary judgment, and moved to transfer venue to this district. On June 3, 2002, Webster filed a response to the Byrd & Byrd's opposition

filed a motion for summary judgment after a much earlier one had been denied.  On November 22, 2002, Byrd & Byrd supplemented that motion with additional exhibits (or filed an additional motion for summary judgment supported by such exhibits).

On October 15, 2002, Webster filed a motion to compel Byrd & Byrd to produce documents as to which Haselrig had asserted a claim of attorney-client privilege.  On November 22, 2002, Byrd & Byrd filed a motion to limit Webster's claims.

On December 4, 2002, Haselrig filed a motion for partial summary judgment.

On January 10, 2003, Webster filed an opposition to both Byrd & Byrd's motion for summary judgment and Haselrig's motion for partial summary judgment.  On February 5, 2003, Webster supplemented that opposition.

On May 12, 2003, Judge Williams held a hearing on all pending motions, and took the ones pertinent here under advisement, noting his view that the issues were very complicated.  On August 28, 2003, Judge Williams issued a memorandum opinion and an order which were later entered by the

---

to his two motions.  On June 7, 2002, the district court (the Honorable ALexander Williams, Jr., presiding) held a hearing on the motions.  On June 10, 2002, the district court entered an order (DE No. 39) which denied Byrd & Byrd's motion for summary judgment, and which, as a consequence, also denied Webster's motion for a discovery period in order to oppose Byrd & Byrd's motion.  The order further denied Webster's motion to transfer venue.

filed a motion for summary judgment after a much earlier one had been denied.  On November 22, 2002, Byrd & Byrd supplemented that motion with additional exhibits (or filed an additional motion for summary judgment supported by such exhibits).

On October 15, 2002, Webster filed a motion to compel Byrd & Byrd to produce documents as to which Haselrig had asserted a claim of attorney-client privilege.  On November 22, 2002, Byrd & Byrd filed a motion to limit Webster's claims.

On December 4, 2002, Haselrig filed a motion for partial summary judgment.

On January 10, 2003, Webster filed an opposition to both Byrd & Byrd's motion for summary judgment and Haselrig's motion for partial summary judgment.  On February 5, 2003, Webster supplemented that opposition.

On May 12, 2003, Judge Williams held a hearing on all pending motions, and took the ones pertinent here under advisement, noting his view that the issues were very complicated.  On August 28, 2003, Judge Williams issued a memorandum opinion and an order which were later entered by the

---

to his two motions.  On June 7, 2002, the district court (the Honorable ALexander Williams, Jr., presiding) held a hearing on the motions.  On June 10, 2002, the district court entered an order (DE No. 39) which denied Byrd & Byrd's motion for summary judgment, and which, as a consequence, also denied Webster's motion for a discovery period in order to oppose Byrd & Byrd's motion.  The order further denied Webster's motion to transfer venue.

clerk on September 3, 2003. The opinion determined that Byrd &
Byrd was entitled to fees of 40% of the gross amount recovered
from the Postal Service. The opinion rejected Webster's cross-
claim on the merits and as an improper attempt to inject a
defendant-against-defendant claim in an interpleader action. The
opinion further appears to have relieved Byrd & Byrd from
producing documents as to which Haselrig asserted a claim of
privilege. The opinion further concluded that the assignment to
the Stancils created a tenancy by the entireties, and limited
Webster's interest to the amount of joint debts in the bankruptcy
case. Finally, the opinion concluded that Mr. Stancil had not
provided sufficient information to substantiate his claim for
damages against Haselrig, and that Haselrig was entitled to
partial summary judgment against Stancil in that regard, but the
opinion did not resolve the amounts of the funds to which
Haselrig, Webster, and the Stancils were respectively entitled.

The order, moreover, failed to specify the amount to be paid
Byrd & Byrd, only recited that Byrd & Byrd's motions for summary
judgment were granted, and directed that "within (10) days of
receipt of this Order the attorneys for [Byrd & Byrd] initiate a
conference call with the Court and all litigants to discuss the
status of the litigation in light of the Court's ruling[.]"

On September 8, 2003, Webster filed a notice of appeal from
the order entered on September 3, 2003. On September 16, 2003,

clerk on September 3, 2003.  The opinion determined that Byrd &
Byrd was entitled to fees of 40% of the gross amount recovered
from the Postal Service.  The opinion rejected Webster's cross-
claim on the merits and as an improper attempt to inject a
defendant-against-defendant claim in an interpleader action.  The
opinion further appears to have relieved Byrd & Byrd from
producing documents as to which Haselrig asserted a claim of
privilege.  The opinion further concluded that the assignment to
the Stancils created a tenancy by the entireties, and limited
Webster's interest to the amount of joint debts in the bankruptcy
case.  Finally, the opinion concluded that Mr. Stancil had not
provided sufficient information to substantiate his claim for
damages against Haselrig, and that Haselrig was entitled to
partial summary judgment against Stancil in that regard, but the
opinion did not resolve the amounts of the funds to which
Haselrig, Webster, and the Stancils were respectively entitled.

The order, moreover, failed to specify the amount to be paid
Byrd & Byrd, only recited that Byrd & Byrd's motions for summary
judgment were granted, and directed that "within (10) days of
receipt of this Order the attorneys for [Byrd & Byrd] initiate a
conference call with the Court and all litigants to discuss the
status of the litigation in light of the Court's ruling[.]"

On September 8, 2003, Webster filed a notice of appeal from
the order entered on September 3, 2003.  On September 16, 2003,

6

Byrd & Byrd filed a motion for disbursement of funds which contended that Byrd & Byrd was entitled to a disbursement of 40% of the interpled funds based on the court's rulings which it characterized as a final judgment. Webster opposed this motion.

On September 29, 2003, Webster filed a Motion for Reconsideration; or in the Alternative, Request for Order Certifying Interlocutory Appeal. The same date the Stancils filed a motion for reconsideration. To the extent the order entered September 3, 2003, could be viewed as a final order, these motions were filed too late to suspend the time for appeal.

On October 3, 2003, Haselrig filed its own notice of appeal.

After Webster and Haselrig filed their notices of appeal, Webster, Haselrig, and the Stancils engaged in settlement negotiations pursuant to appellate mediation processes. These negotiations culminated in a partial settlement resolving their respective differences and agreeing to leave for appeal only the portion relating to Byrd & Byrd's fee claim.

On January 16, 2004, Haselrig, the Stancils, and Webster filed a joint motion for relief from the order entered on September 3, 2003. The Joint Motion requested, pursuant to F.R. Civ. P. 60(b)(5) and the procedure adopted by the Fourth Circuit in Fobian v. Storage Technology Corp., 164 F.3d 887 (4th Cir. 1999), that the district court enter a short memorandum stating its inclination to grant an order relieving these parties from

7

Byrd & Byrd filed a motion for disbursement of funds which
contended that Byrd & Byrd was entitled to a disbursement of 40%
of the interpled funds based on the court's rulings which it
characterized as a final judgment.  Webster opposed this motion.

On September 29, 2003, Webster filed a Motion for
Reconsideration; or in the Alternative, Request for Order
Certifying Interlocutory Appeal.  The same date the Stancils
filed a motion for reconsideration.  To the extent the order
entered September 3, 2003, could be viewed as a final order,
these motions were filed too late to suspend the time for appeal.

On October 3, 2003, Haselrig filed its own notice of appeal.

After Webster and Haselrig filed their notices of appeal,
Webster, Haselrig, and the Stancils engaged in settlement
negotiations pursuant to appellate mediation processes.  These
negotiations culminated in a partial settlement resolving their
respective differences and agreeing to leave for appeal only the
portion relating to Byrd & Byrd's fee claim.

On January 16, 2004, Haselrig, the Stancils, and Webster
filed a joint motion for relief from the order entered on
September 3, 2003.  The Joint Motion requested, pursuant to F.R.
Civ. P. 60(b)(5) and the procedure adopted by the Fourth Circuit
in Fobian v. Storage Technology Corp., 164 F.3d 887 (4th Cir.
1999), that the district court enter a short memorandum stating
its inclination to grant an order relieving these parties from

7

the district court's order entered on September 3, 2003 regarding
their claims against one another, and granting them judgment
reflecting the partial settlement they reached regarding their
differences.  The order sought would have divided the 60% of the
funds to which Byrd & Byrd made no claim between Haselrig and the
Stancils as follows.  Webster would receive 60% and Haselrig 40%
of such funds.  With respect to the 40% awarded to Byrd & Byrd,
if that percentage were later reduced, leaving additional sums
for Haselrig and Webster (and the Stancils on his side) to fight
over between themselves, then those parties would split such sums
as follows.  First, $25,000 would be paid to Webster for
attorney's fees (already incurred by Mr. Stancil on behalf of
both Haselrig and Mr. Stancil) and any part in excess of $25,000
would be divided 60% to Webster and 40% to Haselrig.  The
settlement would leave intact the Stancils' position that all
claims held by either of them (and the proceeds thereof) remained
tenancy by the entireties property.  Webster has now conceded
that the funds he received from the interpleader action are
tenancy by the entireties property, and thus are available only
to pay joint claims against the Stancils, with the balance after
any administrative claims surchargeable against such funds, to be
paid to the Stancils.

    The critical points here are twofold.  First, the appeal had
prompted settlement negotiations that gave rise to a settlement,

the district court's order entered on September 3, 2003 regarding
their claims against one another, and granting them judgment
reflecting the partial settlement they reached regarding their
differences.  The order sought would have divided the 60% of the
funds to which Byrd & Byrd made no claim between Haselrig and the
Stancils as follows.  Webster would receive 60% and Haselrig 40%
of such funds.  With respect to the 40% awarded to Byrd & Byrd,
if that percentage were later reduced, leaving additional sums
for Haselrig and Webster (and the Stancils on his side) to fight
over between themselves, then those parties would split such sums
as follows.  First, $25,000 would be paid to Webster for
attorney's fees (already incurred by Mr. Stancil on behalf of
both Haselrig and Mr. Stancil) and any part in excess of $25,000
would be divided 60% to Webster and 40% to Haselrig.  The
settlement would leave intact the Stancils' position that all
claims held by either of them (and the proceeds thereof) remained
tenancy by the entireties property.  Webster has now conceded
that the funds he received from the interpleader action are
tenancy by the entireties property, and thus are available only
to pay joint claims against the Stancils, with the balance after
any administrative claims surchargeable against such funds, to be
paid to the Stancils.

    The critical points here are twofold.  First, the appeal had
prompted settlement negotiations that gave rise to a settlement,

8

favorable to Webster, of his disputes with Haselrig.  Second, the
filing of the motion shows that the Stancils were themselves
sufficiently concerned that the September 3, 2003, ruling was a
final appealable order that they agreed it was appropriate to
file a motion invoking the Fobian procedure.  It there were no
final appealable order outstanding, resort to the Fobian
procedure would have been unnecessary.

On February 26, 2004, Byrd & Byrd filed a supplemental
motion to disburse funds.

On March 9, 2004, Judge Williams held a telephone conference
with the parties.

On March 22, 2004, the district court issued and the clerk
entered a memorandum opinion and an order denying Byrd & Byrd's
initial motion for disbursement of funds, and partially granting
the Stancils' and Webster's motions for reconsideration.
Specifically, Judge Williams concluded that Byrd & Byrd was not
entitled to summary judgment with respect to the issue of the
reasonableness of the 40% contingency fee, and set that matter
for trial.

However, the March 22, 2004, order is confusing.  With
respect to the order's saying that the reasonableness of the fee
was left for trial, the memorandum opinion appears to acknowledge
for the first time the issue of the validity of the contingency
fee agreement (based on it being a change of an existing hourly

favorable to Webster, of his disputes with Haselrig.  Second, the
filing of the motion shows that the Stancils were themselves
sufficiently concerned that the September 3, 2003, ruling was a
final appealable order that they agreed it was appropriate to
file a motion invoking the <u>Fobian</u> procedure.  It there were no
final appealable order outstanding, resort to the <u>Fobian</u>
procedure would have been unnecessary.

On February 26, 2004, Byrd & Byrd filed a supplemental
motion to disburse funds.

On March 9, 2004, Judge Williams held a telephone conference
with the parties.

On March 22, 2004, the district court issued and the clerk
entered a memorandum opinion and an order denying Byrd & Byrd's
initial motion for disbursement of funds, and partially granting
the Stancils' and Webster's motions for reconsideration.
Specifically, Judge Williams concluded that Byrd & Byrd was not
entitled to summary judgment with respect to the issue of the
reasonableness of the 40% contingency fee, and set that matter
for trial.

However, the March 22, 2004, order is confusing.  With
respect to the order's saying that the reasonableness of the fee
was left for trial, the memorandum opinion appears to acknowledge
for the first time the issue of the validity of the contingency
fee agreement (based on it being a change of an existing hourly

9

fee agreement giving rise to heightened scrutiny), and this is
strengthened by a footnote saying that the court reserves any
discussion on reconsideration of its reasoning regarding
collateral estoppel and res judicata.  On the other hand, the
memorandum opinion could be viewed as leaving intact all prior
rulings except for the reasonableness of the contingency fee
based on eight factors enunciated by the applicable Maryland rule
for evaluating the reasonableness of a fee.

The order further granted, at least partially if not fully
(again it is unclear in this regard) the joint motion for relief
from the ruling entered on September 3, 2003.  The order
disregarded the <u>Fobian</u> procedure as a prelude to entry of such an
order.  Presumably Judge Williams viewed the September 3, 2003
order as non-final (and thus not requiring resort to the <u>Fobian</u>
procedure to set it aside), and viewed his granting of
reconsideration as mooting the appeal (since there was now no
ruling in favor of Byrd & Byrd to mark as final under the
mechanism of Rule 54(b) of the Federal Rules of Civil Procedure
or that it was appropriate to certify for interlocutory appeal).
The order further was silent regarding Webster's request that the
district court certify an interlocutory appeal regarding any
issues not resolved by the partial granting of reconsideration.

On April 15, 2004, Byrd & Byrd filed a motion to strike jury
demands, and on April 19, 2004, it filed a motion to limit the

10

fee agreement giving rise to heightened scrutiny), and this is
strengthened by a footnote saying that the court reserves any
discussion on reconsideration of its reasoning regarding
collateral estoppel and res judicata.  On the other hand, the
memorandum opinion could be viewed as leaving intact all prior
rulings except for the reasonableness of the contingency fee
based on eight factors enunciated by the applicable Maryland rule
for evaluating the reasonableness of a fee.

        The order further granted, at least partially if not fully
(again it is unclear in this regard) the joint motion for relief
from the ruling entered on September 3, 2003.  The order
disregarded the <u>Fobian</u> procedure as a prelude to entry of such an
order.  Presumably Judge Williams viewed the September 3, 2003
order as non-final (and thus not requiring resort to the <u>Fobian</u>
procedure to set it aside), and viewed his granting of
reconsideration as mooting the appeal (since there was now no
ruling in favor of Byrd & Byrd to mark as final under the
mechanism of Rule 54(b) of the Federal Rules of Civil Procedure
or that it was appropriate to certify for interlocutory appeal).
The order further was silent regarding Webster's request that the
district court certify an interlocutory appeal regarding any
issues not resolved by the partial granting of reconsideration.

        On April 15, 2004, Byrd & Byrd filed a motion to strike jury
demands, and on April 19, 2004, it filed a motion to limit the

10

number of trial parties.  The court held a hearing on these
motions on June 7, 2004.

On June 21, 2004, Judge Williams issued and the clerk
entered a memorandum opinion and an order denying the motion to
strike the jury demand, and granting the motion to limit the
number of parties at trial.  Because Webster, the Stancils, and
Haselrig had agreed on a formula for what was to be paid each
after any payment to Byrd & Byrd, Judge Williams concluded that
the dispute was now one between Haselrig and its attorneys, Byrd
& Byrd, and thus limited the trial to Haselrig and Byrd & Byrd.

On July 23, 2004, Webster filed a notice of appeal as to the
order limiting the number of parties at trial, but Correia does
not seek compensation for work related to the second appeal.

On August 10, 2004, months after the March 22, 2004,
decision by Judge Williams, Webster filed an opposition in the
court of appeals to Byrd & Byrd's motion for dismissal of the
pending appeal, arguing that the pending appeal was (1) justified
as an interlocutory appeal or (2) justified under Rule 54(b).
The opposition was not likely to succeed.

By then it was clear that the district court had not
certified an interlocutory appeal, a condition precedent to an
interlocutory appeal.  The opposition devotes several pages to
the standard for a district court's allowing pursuit of an
interlocutory appeal as though satisfaction of the standard

11

number of trial parties.  The court held a hearing on these
motions on June 7, 2004.

On June 21, 2004, Judge Williams issued and the clerk
entered a memorandum opinion and an order denying the motion to
strike the jury demand, and granting the motion to limit the
number of parties at trial.  Because Webster, the Stancils, and
Haselrig had agreed on a formula for what was to be paid each
after any payment to Byrd & Byrd, Judge Williams concluded that
the dispute was now one between Haselrig and its attorneys, Byrd
& Byrd, and thus limited the trial to Haselrig and Byrd & Byrd.

On July 23, 2004, Webster filed a notice of appeal as to the
order limiting the number of parties at trial, but Correia does
not seek compensation for work related to the second appeal.

On August 10, 2004, months after the March 22, 2004,
decision by Judge Williams, Webster filed an opposition in the
court of appeals to Byrd & Byrd's motion for dismissal of the
pending appeal, arguing that the pending appeal was (1) justified
as an interlocutory appeal or (2) justified under Rule 54(b).
The opposition was not likely to succeed.

By then it was clear that the district court had not
certified an interlocutory appeal, a condition precedent to an
interlocutory appeal.  The opposition devotes several pages to
the standard for a district court's allowing pursuit of an
interlocutory appeal as though satisfaction of the standard

11

without the district court's having acted gives rise to an interlocutory appeal.

As to the Rule 54(b) argument, the trustee essentially attempted to combine his appeal of the March 22, 2004 order with the appeal from the September 3, 2003 order and thereby argue that the district court had made clear its intent to completely dispose of Webster's claims such that Rule 54(b) applied. However, whatever recovery Webster would obtain would depend on the amount by which Byrd & Byrd's claim was limited.  So it is difficult to understand how there was an implicit Rule 54(b) adjudication.  Nevertheless, Webster cited decisions in which courts of appeals had held that a trial court's rulings could be treaded as implicit Rule 54(b) determinations even though not clearly utilizing the precise language of that rule.

Moreover, Correia justifies the opposition as having kept the pressure on Byrd & Byrd.

Meanwhile, back in the district court, in September and October 2004, Haselrig and Byrd & Byrd filed various papers (exhibit lists, proposed voir dire, a motion in limine, etc.) regarding the forthcoming jury trial.  On October 5, 2004, Judge Williams commenced the trial (with the docket entries referring to it as a bench trial) which concluded on October 18, 2004, with the parties, Haselrig and Byrd & Byrd, thereafter submitting proposed findings of fact and conclusions of law.

12

without the district court's having acted gives rise to an interlocutory appeal.

As to the Rule 54(b) argument, the trustee essentially attempted to combine his appeal of the March 22, 2004 order with the appeal from the September 3, 2003 order and thereby argue that the district court had made clear its intent to completely dispose of Webster's claims such that Rule 54(b) applied. However, whatever recovery Webster would obtain would depend on the amount by which Byrd & Byrd's claim was limited. So it is difficult to understand how there was an implicit Rule 54(b) adjudication. Nevertheless, Webster cited decisions in which courts of appeals had held that a trial court's rulings could be treaded as implicit Rule 54(b) determinations even though not clearly utilizing the precise language of that rule.

Moreover, Correia justifies the opposition as having kept the pressure on Byrd & Byrd.

Meanwhile, back in the district court, in September and October 2004, Haselrig and Byrd & Byrd filed various papers (exhibit lists, proposed voir dire, a motion in limine, etc.) regarding the forthcoming jury trial. On October 5, 2004, Judge Williams commenced the trial (with the docket entries referring to it as a bench trial) which concluded on October 18, 2004, with the parties, Haselrig and Byrd & Byrd, thereafter submitting proposed findings of fact and conclusions of law.

12

On December 28, 2004, Judge Wiliams issued and the clerk entered a memorandum opinion in which he concluded that the Contingency Fee Agreement calling for a 40% contingency fee was void, and that Byrd & Byrd's compensation should be limited to the firm's reasonable hourly fees, calculated according to the lodestar approach.  Judge Williams directed the parties to agree as to the final amount of Byrd & Byrd's fees or submit briefs itemizing Byrd's reasonable hourly fees and proposing an appropriate final award.

The parties quickly reached an agreement approved by Judge Williams on January 11, 2005, and later by this court, under which Byrd & Byrd would receive only $300,000 instead of the approximately $1,064,440.00 that a 40% share would have represented.  The remaining funds (including interest that had accumulated on the interpled funds) would be divided slightly over 60% to Webster and slightly under 40% to Haselrig.[3]

The Stancils do not question the favorableness of the result, but do question the attorney's fees spent on the appeals of what they characterize as non-final and non-appealable orders.

---

[3]  Webster was to receive $1,351,489.11 plus 60% of any interest accruing on the res since January 5, 2005, and Haselrig was to receive $884,326.07 plus 40% of any interest accruing on the res since January 5, 2005.  By this court's calculation, as of January 5, 2005, Webster's share of the funds divided between him and Haselrig was $10,000 plus 60% of the remaining funds after subtracting out that $10,000.

On December 28, 2004, Judge Wiliams issued and the clerk entered a memorandum opinion in which he concluded that the Contingency Fee Agreement calling for a 40% contingency fee was void, and that Byrd & Byrd's compensation should be limited to the firm's reasonable hourly fees, calculated according to the lodestar approach.  Judge Williams directed the parties to agree as to the final amount of Byrd & Byrd's fees or submit briefs itemizing Byrd's reasonable hourly fees and proposing an appropriate final award.

The parties quickly reached an agreement approved by Judge Williams on January 11, 2005, and later by this court, under which Byrd & Byrd would receive only $300,000 instead of the approximately $1,064,440.00 that a 40% share would have represented.  The remaining funds (including interest that had accumulated on the interpled funds) would be divided slightly over 60% to Webster and slightly under 40% to Haselrig.[3]

The Stancils do not question the favorableness of the result, but do question the attorney's fees spent on the appeals of what they characterize as non-final and non-appealable orders.

---

[3]  Webster was to receive $1,351,489.11 plus 60% of any interest accruing on the res since January 5, 2005, and Haselrig was to receive $884,326.07 plus 40% of any interest accruing on the res since January 5, 2005.  By this court's calculation, as of January 5, 2005, Webster's share of the funds divided between him and Haselrig was $10,000 plus 60% of the remaining funds after subtracting out that $10,000.

### Webster v. Mrs. Stancil Under § 363(h)

On November 26, 2003, Webster commenced Adversary Proceeding
No. 03-10220 against Mrs. Stancil, seeking an order under 11
U.S.C. § 363(h) to authorize him to sell Sherman Avenue free of
her interest.  Mrs. Stancil complicated that proceeding by filing
an inappropriate third-party complaint against the tenants of the
apartment building at the Sherman Avenue property as well as Byrd
& Byrd.  Webster attempted to keep the proceeding on a fast
track, but Mrs. Stancil succeeded in convincing the court, at
least as a preliminary ruling, that it ought to determine her
counterclaim against Webster for uncollected rents as part of
addressing whether the estate would be benefitted by a sale.  But
the court set a hearing to give Webster a further opportunity to
convince the court to the contrary.  At a hearing of September
22, 2004, Webster agreed to dismiss this adversary proceeding
without prejudice and by stipulation it was dismissed on
September 28, 2004.

### Webster v. Byrd re Sherman Avenue Lien

Stancil challenges as well work performed by Corriea in an
adversary proceeding in this court entitled Webster v. Toby Byrd
and Byrd & Byrd, LLC, Adversary Proceeding No. 04-10039.  Webster
commenced that proceeding on March 20, 2004, seeking to declare
the lien of Byrd & Byrd on the Sherman Avenue property as void.

On April 6, 2004, Webster filed his first motion for summary

14

<u>Webster v. Mrs. Stancil Under § 363(h)</u>

On November 26, 2003, Webster commenced Adversary Proceeding No. 03-10220 against Mrs. Stancil, seeking an order under 11 U.S.C. § 363(h) to authorize him to sell Sherman Avenue free of her interest.  Mrs. Stancil complicated that proceeding by filing an inappropriate third-party complaint against the tenants of the apartment building at the Sherman Avenue property as well as Byrd & Byrd.  Webster attempted to keep the proceeding on a fast track, but Mrs. Stancil succeeded in convincing the court, at least as a preliminary ruling, that it ought to determine her counterclaim against Webster for uncollected rents as part of addressing whether the estate would be benefitted by a sale.  But the court set a hearing to give Webster a further opportunity to convince the court to the contrary.  At a hearing of September 22, 2004, Webster agreed to dismiss this adversary proceeding without prejudice and by stipulation it was dismissed on September 28, 2004.

<u>Webster v. Byrd re Sherman Avenue Lien</u>

Stancil challenges as well work performed by Corriea in an adversary proceeding in this court entitled <u>Webster v. Toby Byrd and Byrd & Byrd, LLC</u>, Adversary Proceeding No. 04-10039.  Webster commenced that proceeding on March 20, 2004, seeking to declare the lien of Byrd & Byrd on the Sherman Avenue property as void.

On April 6, 2004, Webster filed his first motion for summary

14

judgment seeking a ruling that the lien was void based on the parol evidence rule and based on alleged satisfaction of the guarantee via payments by the initial payment from Postal Service funds to Byrd & Byrd in an amount exceeding $75,000.  On May 26, 2004, this court denied that motion pursuant to an oral motion, presumably as premature pending discovery, as requiring greater detail, and based on the court's not being convinced that the trustee's legal argument was correct.  However, the motion set forth a credible argument.

On June 7, 2004, the defendants filed a motion to consolidate this proceeding with Adversary Proceeding No. 03-10220, the proceeding in which Webster was seeking to sell Sherman Avenue free of Ms. Stancil's interest in the property pursuant to 11 U.S.C. § 363(h).  Ms. Stancil had filed a third-party complaint against Byrd & Byrd in that proceeding.  Webster filed an opposition to Byrd & Byrd's motion on June 17, 2004.  The court agreed with Webster's opposition, concluding that Byrd & Byrd ought not be a party in Adv. Pro. No. 03-10220, and thus denied consolidation of the two proceedings.  The court rejects the Stancils' argument that Webster wasted estate funds by not allowing the two proceedings to be consolidated.

On July 16, 2004, Webster filed a second motion for summary judgment advancing concessions Toby Byrd had made in discovery as having strengthened Webster's position that the deed of trust was

15

judgment seeking a ruling that the lien was void based on the
parol evidence rule and based on alleged satisfaction of the
guarantee via payments by the initial payment from Postal Service
funds to Byrd & Byrd in an amount exceeding $75,000.  On May 26,
2004, this court denied that motion pursuant to an oral motion,
presumably as premature pending discovery, as requiring greater
detail, and based on the court's not being convinced that the
trustee's legal argument was correct.  However, the motion set
forth a credible argument.

On June 7, 2004, the defendants filed a motion to
consolidate this proceeding with Adversary Proceeding No. 03-
10220, the proceeding in which Webster was seeking to sell
Sherman Avenue free of Ms. Stancil's interest in the property
pursuant to 11 U.S.C. § 363(h).  Ms. Stancil had filed a third-
party complaint against Byrd & Byrd in that proceeding.  Webster
filed an opposition to Byrd & Byrd's motion on June 17, 2004.
The court agreed with Webster's opposition, concluding that Byrd
& Byrd ought not be a party in Adv. Pro. No. 03-10220, and thus
denied consolidation of the two proceedings.  The court rejects
the Stancils' argument that Webster wasted estate funds by not
allowing the two proceedings to be consolidated.

On July 16, 2004, Webster filed a second motion for summary
judgment advancing concessions Toby Byrd had made in discovery as
having strengthened Webster's position that the deed of trust was

15

void based on the parol evidence rule.  On September 9, 2004, the
court denied that motion in an eight-page order.  Again, the
arguments Webster pressed were entirely credible albeit
ultimately unpersuasive.

II

The Stancils challenge the necessity of the Sherman Avenue
adversary proceedings, and other work attempting to sell that
property, in light of other liens on Sherman Avenue and the value
of Sherman Avenue.  However, it was unclear that the Sherman
Avenue property would not confer any benefit to the estate.  The
Stancils sought to compel the trustee to abandon all tenants by
the entireties property, but the hearing kept being put off by
both parties' request, and not until a hearing of September 22,
2004, was a resolution reached.

Even then the court only agreed that it was appropriate for
the trustee to discontinue the section 363(h) proceeding without
prejudice, and the court determined that it was premature to
order an abandonment of Sherman Avenue as joint claims had not
yet been determined.  By September 22, 2004, Webster recognized
that the Sherman Avenue sale was unlikely to be effectuated
promptly (due to the unanticipated difficulties he had
encountered in the two adversary proceedings).  Webster was
concerned that in light of the difficulties and expense that
effectuating a sale would entail, plus the unresolved rights of

16

void based on the parol evidence rule.  On September 9, 2004, the
court denied that motion in an eight-page order.  Again, the
arguments Webster pressed were entirely credible albeit
ultimately unpersuasive.

II

The Stancils challenge the necessity of the Sherman Avenue
adversary proceedings, and other work attempting to sell that
property, in light of other liens on Sherman Avenue and the value
of Sherman Avenue.  However, it was unclear that the Sherman
Avenue property would not confer any benefit to the estate.  The
Stancils sought to compel the trustee to abandon all tenants by
the entireties property, but the hearing kept being put off by
both parties' request, and not until a hearing of September 22,
2004, was a resolution reached.

Even then the court only agreed that it was appropriate for
the trustee to discontinue the section 363(h) proceeding without
prejudice, and the court determined that it was premature to
order an abandonment of Sherman Avenue as joint claims had not
yet been determined.  By September 22, 2004, Webster recognized
that the Sherman Avenue sale was unlikely to be effectuated
promptly (due to the unanticipated difficulties he had
encountered in the two adversary proceedings).  Webster was
concerned that in light of the difficulties and expense that
effectuating a sale would entail, plus the unresolved rights of

16

the estate in the Haselrig litigation, he did not have a
sufficiently clear picture regarding the necessity and
advisability of pursuing a sale of the Sherman Avenue property.
He accordingly put those sale efforts on hold.  Correia then
devoted little work to the Sherman Avenue sale issues.
Accordingly, it is inappropriate to disallow fees related to the
work Correia performed regarding Sherman Avenue.

If the Haselrig litigation had come up a goose egg, then
plainly the trustee's efforts to pursue sale of Sherman Avenue
was appropriate.  By January 2004, Webster knew he should receive
at least 60% of 60% of the interpled funds or 36% of the $2.661
million or an award of $805,822.80.  Whether that would suffice
to pay all joint claims, however, was unclear.  The debtor's
basis in the property was unclear, and Mr. Stancil was
uncooperative in responding to Webster's Rule 2004 inquiries to
obtain information with which accurately to determine the basis.
In addition, the losses from the operation of the Sherman Avenue
property might have affected that basis.

The court's oral ruling of today addresses additional
objections made regarding the work performed regarding Sherman
Avenue, and concludes that no disallowance is appropriate
regarding the amounts sought relating to such work.

17

the estate in the Haselrig litigation, he did not have a
sufficiently clear picture regarding the necessity and
advisability of pursuing a sale of the Sherman Avenue property.
He accordingly put those sale efforts on hold.  Correia then
devoted little work to the Sherman Avenue sale issues.
Accordingly, it is inappropriate to disallow fees related to the
work Correia performed regarding Sherman Avenue.

If the Haselrig litigation had come up a goose egg, then
plainly the trustee's efforts to pursue sale of Sherman Avenue
was appropriate.  By January 2004, Webster knew he should receive
at least 60% of 60% of the interpled funds or 36% of the $2.661
million or an award of $805,822.80.  Whether that would suffice
to pay all joint claims, however, was unclear.  The debtor's
basis in the property was unclear, and Mr. Stancil was
uncooperative in responding to Webster's Rule 2004 inquiries to
obtain information with which accurately to determine the basis.
In addition, the losses from the operation of the Sherman Avenue
property might have affected that basis.

The court's oral ruling of today addresses additional
objections made regarding the work performed regarding Sherman
Avenue, and concludes that no disallowance is appropriate
regarding the amounts sought relating to such work.

III

With respect to work on the Haselrig litigation,
specifically some of the work related to the appeals of certain
orders of the district court in that litigation, the court has
concluded that a disallowance of some of the fees sought is in
order in the amounts, and for the reasons specified, in the
court's oral completion of its ruling today.

IV

The parties are to submit a proposed order reflecting the
amounts to be allowed pursuant to the rulings embodied herein and
in the court's oral ruling issued from the bench today in
completion of this opinion.

[Signed and dated above.]


Copies to: Debtor; Debtor's Attorney; Wendell W. Webster; Office
of U.S. Trustee.

III

With respect to work on the Haselrig litigation,
specifically some of the work related to the appeals of certain
orders of the district court in that litigation, the court has
concluded that a disallowance of some of the fees sought is in
order in the amounts, and for the reasons specified, in the
court's oral completion of its ruling today.

IV

The parties are to submit a proposed order reflecting the
amounts to be allowed pursuant to the rulings embodied herein and
in the court's oral ruling issued from the bench today in
completion of this opinion.

[Signed and dated above.]


Copies to: Debtor; Debtor's Attorney; Wendell W. Webster; Office
of U.S. Trustee.